UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Russell Barnhouse,

    Plaintiff,

-V-                                                       Case No. C-2-04-0987
                                                        JUDGE SMITH
                                                        Magistrate Judge Kemp

Honda of America Mfg., Inc.,

    Defendant.


**OPINION AND ORDER**

      Plaintiff Russell Barnhouse brings this action against Defendant Honda of America Mfg., Inc. alleging a wrongful discharge in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA").  This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 42).  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.  FACTS**

      Plaintiff Russell Barnhouse ("Plaintiff" and/or "Barnhouse") is an individual citizen of the State of Ohio.  Defendant Honda of America, MFG., Inc. ("Defendant" and/or "Honda") is an Ohio corporation with manufacturing facilities in Logan County, Ohio, and an employer within the meaning of the FMLA.  Plaintiff was employed by Defendant Honda as a production associate from 1984 until his employment was terminated on July 12, 2004.

A.    Honda's Attendance Policies

Defendant Honda has a written policy published in its associate handbook that requires associates to maintain 98 percent attendance. At Honda, attendance percentage is based on "occurrences," which are unexcused absences from work (i.e. absences not covered by vacation or approved time away from work such as FMLA leave). Defendant calculates attendance using a rolling 12-month period, therefore an associate's attendance percentage can change from day to day.

If an associate falls below the 98 percent attendance requirement, Honda follows a progressive disciplinary system. The first step is a coordinator-level counseling. If the associate then continues to have occurrences and his attendance falls below 98 percent, he will receive an associate relations-level counseling, followed by a manager-level counseling. If the associate still continues to have occurrences and falls below 98 percent attendance, he will be put on an Attendance Improvement Program ("AIP"). The AIP is designed to help the associate improve his attendance habits by requiring a phased reduction in occurrences over the six-month period.

After an associate completes an AIP, his attendance is monitored for the next six months. If the associate has two occurrences within the first three months of completing an AIP and falls below 98 percent attendance, the associate will be terminated. Plaintiff received the Honda associate handbook and acknowledged that he read it. Plaintiff understood that failure to comply with Honda's attendance requirements could lead to his termination.

B.    Plaintiff's Attendance Problems

Since Plaintiff began his employment with Honda, it appears he has faced many attendance problems. In May 1994, Plaintiff received coordinator-level counseling for

attendance. Then in August 1994, he received associate relations-level counseling. In February 1995, he received manager-level counseling. Plaintiff was placed on his first AIP in July 1995. After completing the AIP, he was again counseled on a number of occasions. He received coordinator-level counseling in December 2002, associate relations-level counseling in January 2003, and manager-level counseling in May 2003. Plaintiff was placed on a second AIP in July 2003. After completing the second AIP in February 2004, Plaintiff was told that if he had two attendance occurrences and his attendance fell below 98 percent during the next three months, he would be terminated.

By the time Plaintiff completed the second AIP, he had also participated in 15 separate formal attendance counselings and AIP meetings in which Honda associates discussed his attendance and warned him about the consequences of continuing attendance occurrences. To get to this point, Plaintiff had accumulated dozens of attendance occurrences. Plaintiff does not contend that any of these occurrences were protected by FMLA.

Despite the counseling and explicit warnings, Plaintiff had an attendance occurrence on February 23, 2004. He then had two additional occurrences on April 22 and 23, 2004. Plaintiff was then terminated following these final occurrences.

### C.     Honda's Leave of Absence Policies and Plaintiff's Leaves

Honda's leave of absence policies require that all leaves be requested in a timely manner. In 2004, when an associate gave notice of a need for leave, the Leave Coordination Department at Honda ("Leave Department") provided the associate with a packet that included a leave request form, a health care provider certification form, and instruction on how to complete those documents. When an associate requests a leave for his own medical condition, he must submit a

certification form completed by his health care provider.  Plaintiff was aware of Honda's leave policies as he took at least 130 leaves of absence during his career at Honda.

In January 2004, Plaintiff was approved for an intermittent leave of absence under FMLA for cephalgia (migraine headaches coupled with abdominal pain).  Pursuant to his doctor's certification, Plaintiff was granted leave for two episodes of cephalgia per month, with each episode to be one to two days in duration.  Plaintiff, however, used the intermittent leave more frequently, using it to cover 11 absences in March and 19 days in April 2004.

Beginning on March 31, 2004, Plaintiff began to use his intermittent leave on a daily basis, continuing until April 21, 2004.  On April 22, 2004, Plaintiff returned to work and presented his slips for his days off, as well as a return to work slip from his treating physician.  The return to work slip included work restrictions.  These work restrictions were related to a pre-existing cervical condition, not cephalgia.  Plaintiff discussed his work restrictions and some new complaints about his hands with Connie Oen, a registered nurse in the medical department at Honda.  The work restrictions prohibited Plaintiff from pushing or pulling carts of greater than 30 pounds of force and prohibited repetitive cervical neck rotation.  (*See* Oen Depo. at 41-47).

According to Honda, associates who return to work after a leave with work restrictions are required to notify Honda of their return at least 48 hours before they return to work, to allow Honda time to find a job assignment that meets the restrictions.  If Honda cannot accommodate the restrictions, the associate is not permitted to work and it is the associate's responsibility to cover his time away from work.  An associate may cover by using vacation days, taking a leave of absence, or taking an attendance occurrence.  (*See* Oen Depo. at 26; Huber Depo. at 41-43, 81-84).   Oen reminded Plaintiff of this policy when she reviewed Plaintiff's work restrictions.

Oen then consulted with Sherry Burton, the safety representative for Plaintiff's department, to determine whether the restrictions could be accommodated. Oen and Burton concluded that additional time was needed to assess which of the new processes met Plaintiff's restrictions because Plaintiff's restrictions were significant and because during Plaintiff's absence, his department had made changes to most of the job processes. Therefore, Oen told Plaintiff he could not be placed to work on April 22nd and should return in two days for placement. She also reminded him that he would need to cover his absences on April 22 and 23. As of April 22nd, however, Plaintiff had used all of his four weeks of vacation for the year and therefore could not cover the days with vacation. Plaintiff then went to Honda's Leave Department to get a leave of absence packet for leave related to his work restrictions.

      Plaintiff had until May 13, 2004 to return the completed leave documentation, but he failed to do so. Plaintiff's absences on April 22 and 23, 2004 were counted as occurrences. Plaintiff claims he told Honda that he did not feel right to have his doctor verify that he could not work these two days when his doctor had just released him to work, but with restrictions. Therefore, Plaintiff admits that he did not seek medical documentation to cover those days.

      On Friday, April 23, 2004, Oen informed Plaintiff that Honda would in fact be able to accommodate his restrictions within the two-day period, beginning on Monday, April 26. Rather than returning to work on April 26th, Plaintiff began another extended leave of absence. When Plaintiff returned to work on July 6, 2004, Dave Huber, an associate in Honda's associate relations department, told Plaintiff that his absences violated AIP guidelines. After an investigation, Honda concluded that consistent with their policies outlined in the associate handbook, Plaintiff should be terminated for his repeated violations of Honda's attendance

policies. On July 12, 2004, Huber told Plaintiff that he was being terminated for his failure to comply with Honda's attendance policies.

### D. Plaintiff's Associate Review Panel

Honda has a procedure for associates who have been terminated for violating attendance policies to have the termination decision reviewed by an associate review panel. On July 12, 2004, Plaintiff told Huber that he wanted an associate review panel to review his termination. On July 14, 2004, Huber contacted Plaintiff to inform him of the date and time of the review panel. On July 21, 2004, Plaintiff appeared at the review panel.[1] The review panel voted to uphold Plaintiff's termination. Honda also describes that Plaintiff acted in a threatening manner after the panel's decision was announced and his benefits were being explained. Plaintiff, however, claims that he never threatened to harm anyone at any time during his termination and the review panel process. It does not appear that these disputed facts are relevant to the FMLA claims, however, because the termination had already taken place and any retaliation or threatening behavior by Plaintiff could not be used as a basis for his termination. Therefore, the Court will disregard these disputed facts.

Defendant Honda now moves for summary judgment on Plaintiff's FMLA claim, arguing that his claim is without merit as a matter of law.

---

[1] Defendant Honda included in their facts that Plaintiff appeared at the review panel carrying an eight-inch pocket knife. According to Honda, their associate standards of conduct prohibit bringing weapons or other related paraphernalia onto Honda's premises. Plaintiff concedes that he carried a pocket knife on numerous occasions, including to work, but that he never brandished it. Plaintiff contests whether Honda has any rules prohibiting bringing a pocket knife to work and have failed to define what constitutes a weapon under the aforementioned policy. This dispute, however, is not material to the FMLA claim at issue and will not be considered.

## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[2]  The Court disregards all evidence favorable to the moving party that the

---

[2] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for

jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice" ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

---

summary judgment motions.

-8-

### III.    DISCUSSION

Plaintiff Barnhouse alleges that Defendant Honda violated FMLA, 29 U.S.C. §2614(a)(1), because Honda did not immediately return him to work when he appeared on April 22, 2004, and then terminated him because of his absences on April 22-23, 2004.  The FMLA "allows 'eligible' employees of a covered employer to take job-protected, unpaid leave, or to substitute appropriate paid leave if the employee has earned or accrued it, for up to a total of 12 workweeks in any 12 months … because the employee's own serious health condition makes the employee unable to perform the functions of his or her job."  29 C.F.R. § 825.100(a).  The FMLA provision alleged to have been violated provides:  "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  *See* 29 U.S.C. §2614(a)(1); *see also* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act.").

Plaintiff argues that Honda's treatment of him upon his return from his FMLA leave on April 22, 2004 was a violation of FMLA.  Plaintiff claims that Honda discriminated against him for having taken the FMLA leave, which constitutes interference and restraint.  Plaintiff cites to 29 C.F.R. §825.220(b) and (c).  To prevail on an interference claim, Plaintiff must show that he was entitled to take leave under FMLA and that Honda denied FMLA benefits to which he was entitled.  *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005); *Arban v. West Publishing Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  Specifically, Plaintiff must prove that:  (1) he is an "eligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "employer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4)

the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled. *See Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 720 (6th Cir. 2003) (*citing Price v. Multnomah County*, 132 F. Supp. 2d 1290, 1297 (D. Or. 2001)).

Defendant Honda argues that Plaintiff's FMLA claim fails for three reasons: (1) Plaintiff had to provide two business days notice before he returned to work on April 22nd and he failed to do so; (2) Plaintiff cannot claim he was entitled to FMLA leave to cover the April 22-23 absences because he was not an "eligible employee" at that time and he never returned any certification; (3) some of Plaintiff's absences were due to his substance abuse problem and such absences are not covered by FMLA.[3]

### A. Notice Prior to Returning to Work

Defendant Honda argues that Plaintiff was terminated for attendance problems that were wholly unrelated to his FMLA leave. It is well settled that an employer may terminate an employee for poor attendance so long as the absences in question do not implicate the FMLA. *Lackey v. Jackson County Tennessee*, 104 Fed. Appx. 483, 486 (6th Cir. 2004).

---

[3] Defendant references Plaintiff's treating physicians' concerns about Plaintiff's abuse of, and addiction to, various pain medications. Plaintiff, however, disputes this evidence and points out that there is no evidence as to what days if any Plaintiff allegedly took off due to his alleged drug abuse. Based on this factual dispute, it would be a matter that would most likely need to be presented to a jury, however, the Court does not believe that any evidence regarding the alleged drug abuse is necessary to rule on the pending Motion for Summary Judgment. The Court is focused on April 22-23, 2004, and there is no allegation of drug abuse surrounding Plaintiff's willingness to work those days.

Defendant asserts that Plaintiff was well aware of Honda's attendance policies as he went through Honda's progressive attendance counseling process on several occasions and he was placed on two AIPs. When Plaintiff completed his second AIP in February 2004, he was advised that he would be terminated if he had two occurrences during the next three months. Despite this warning, Plaintiff had an occurrence on February 23, 2004. Plaintiff does not contend that this absence involved the FMLA. Therefore, the next absences or occurrences that triggered Plaintiff's termination, after he received the warning, occurred on April 22-23, 2004.

Plaintiff's primary argument is that his absences on April 22nd and 23rd should not have been counted as attendance occurrences because Honda was required to immediately return him to work after his extended FMLA leave. Defendant Honda, however, argues that these absences were occurrences because he failed to give Honda proper notice that he was returning to work. Honda's policy requires that associates, who return to work from a leave and have significant restrictions, must give Honda two days advance notice of their return, so Honda has time to find a job assignment that meets the restrictions.

Plaintiff's approved intermittent leave was for two episodes per month and two days per episode, for a maximum of four days of FMLA leave per month. In April 2004, Plaintiff was off work for 15 consecutive work days, more than three times the approved leave amount. Once Plaintiff exceeded the approved leave amount, his need varied from that previously approved. If Plaintiff intended to take April 22-23 as part of his FMLA leave, he was required to notify Defendant Honda. Further, based on the change of circumstances and his extended time off, Plaintiff was obligated to provide two days notice of his return to work date in accordance with Honda' policy.

Whenever possible, an employee must give his employer sufficient notice of his intention to use family medical leave. *See* 29 C.F.R. § 825.302(a). The notice may be verbal, and it "need not expressly assert rights under the FMLA . . . ." 29 C.F.R. § 825.302(c). Although an employer may require an employee to "comply with the employer's usual and customary notice and procedural requirements for requesting leave . . . failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d). If an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave. 29 C.F.R. § 825.304(a).

The relevant notice regulations provide:

(c) It may be necessary for an employee to take more leave than originally anticipated. Conversely, an employee may discover after beginning leave that the circumstances have changed and the amount of leave originally anticipated is no longer necessary. An employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave. In both of these situations, the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable. The employer may also obtain information on such changed circumstances through requested status reports.

29 C.F.R. § 825.309(c). In addition, 29 C.F.R. § 825.312(e) states "[i]f the employee is able to return to work earlier than anticipated, the employee shall provide the employer two business days notice where feasible; the employer is required to restore the employee once such notice is given, or where such prior notices was not feasible."

Plaintiff argues that Defendant's reliance on 29 C.F.R. §825.309(c) and §825.312(e) is incorrect. Plaintiff argues that this two-day advance notice of the return to work date does not apply to intermittent leave. Plaintiff and Defendant both agree that pursuant to *Hoge v. Honda of*

*America Mfg.*, *Inc.*, 384 F.3d 238 (6th Cir. 2004), Honda's duty regarding job restoration is unambiguously triggered immediately upon return *unless* the dictates of 29 C.F.R. §825.309(c) and §825.312(e) apply.

Plaintiff argues that he was using previously approved intermittent leave, not continuous leave, and he was calling in on a regular basis.  Plaintiff asserts that he did not provide Honda a later date for his return and then he showed up earlier nor did he change his return date.  Plaintiff asserts that he did not call off or indicate he would be off on April 22-23 and then he showed up unexpectedly.  Plaintiff Barnhouse asserts that his "intermittent leave time was not needed for those days, therefore the leave was over." (Pl.'s Memo. at 14).  Therefore, because he says he didn't tell Honda one thing (e.g. that he would be off) and then he showed up, that there were no changed circumstances and the two day notice rule does not apply.  Plaintiff further asserts that it was not "feasible" for him to know two days in advance of his return.

While it is true that Plaintiff did not return earlier than anticipated because there was no stated date of anticipated return, his intermittent leave could more likely be characterized as continuous leave.  Under the aforementioned regulations, an employee can take more or less leave than originally anticipated under FMLA, but when he does so, his employer is entitled to two days advance notice of his return to work date.  Therefore, due to the length of time that Plaintiff was off work, more than his previously approved maximum of four days of leave per month, Plaintiff was required to provide two days notice of his return to work date.

Courts have held that "regular attendance is a minimum function of almost any job and that excessive absenteeism is a legitimate reason to terminate an employee." *Summerville v.*

*Esco Company Ltd. Partnership*, 52 F. Supp. 2d 804 (W.D. Mich. 1999) (*citing Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).  Defendants make clear, and Plaintiff does not contest, that his FMLA absences were not considered occurrences for purposes of Honda's attendance policy.  Rather, Plaintiff had numerous other unexcused absences or occurrences that warranted his placement in counseling and the AIP program.  There is no question that Plaintiff was given sufficient warnings and notice that two more occurrences would result in his termination.

Finally, Plaintiff argues that even if the two-day notice provisions are applicable to this case, Honda's penalizing Plaintiff with termination after it sent him home would still be a violation of the FMLA.  Relying on *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554 (6th Cir. 2006), Plaintiff argues that even after applying the aforementioned regulations, Defendant should not have penalized him any more than a two-day delay in job restoration.  The Court finds that Plaintiff's reliance on *Killian* is misplaced.  In *Killian*, the Plaintiff was attempting to extend her FMLA time and the issue was whether she provided sufficient notice to do so.  The Court found that she did.  The Court also stated that "even if Killian's notice had been late, Yorozu's only legal recourse would have been either to waive the notice requirement or to delay her leave.  The statute and regulations do not permit an employer to terminate an employee merely for failure to provide timely notice." *Killian*, 454 F.3d at 554.

Plaintiff has relied on this last statement by the *Killian* court to support his argument that he could not be terminated for failing to provide timely notice of his return to work.  This argument is not persuasive, however, as Plaintiff has not argued that he was attempting to extend his FMLA leave, and Plaintiff was not terminated for failing to provide timely notice.  Plaintiff

was terminated because he violated Honda's attendance policy. Therefore, the Court finds that Plaintiff was terminated in accordance with Honda's attendance policy and not in violation of FMLA.

### B. Eligible Employee

Even though the Court has found that Plaintiff was terminated in accordance with Honda's attendance policy and not in violation of the FMLA, the Court will consider Defendant's second argument as to why Plaintiff's FMLA claim fails: Plaintiff cannot claim he was entitled to FMLA leave to cover the April 22-23 absences because he was not an "eligible employee" at that time and he never returned any certification. As set forth in the beginning of this discussion section, there are five elements that Plaintiff must establish to prevail on an FMLA interference claim. The first element is eligible employee. Defendant argues that Plaintiff cannot establish this first element and therefore Plaintiff's FMLA claim must fail. The Court agrees.

The initial problem with Plaintiff's FMLA claim is the days in question, April 22-23, 2004, were not days that Plaintiff claims he took or should have been entitled to take under FMLA. Plaintiff has not asserted throughout this litigation that these two days should have been covered under FMLA. When Plaintiff was told he could not be placed for work on April 22nd because he failed to give proper notice before returning to work, he did seek another leave packet from the Leave Department. Plaintiff had until May 13, 2004 to complete the leave documentation, but failed to do so. Therefore, Plaintiff's absences on April 22 and 23, 2004 were counted as occurrences. Plaintiff claims he told Honda that he did not feel right asking his

doctor verify that he could not work these two days when his doctor had just released him to work.  However, he was released to work with restrictions.  Regardless of Plaintiff's reasoning, he admits that he did not seek additional FMLA leave to cover his absences on April 22-23.

Even if Plaintiff were to seek FMLA to cover the additional absences, Defendant further argues that Plaintiff is not an eligible employee because he had not worked 1,250 hours in the prior twelve month period.  The affidavit of Jeanne Them, the Business Administrative Coordinator in Honda's Payroll Department who was responsible for maintaining time and attendance records, shows that Plaintiff worked 993.65 hours from April 23, 2003 to April 22, 2004.

There is no question that Plaintiff bears the burden of proving that he was eligible for and entitled to FMLA leave.  *See Cavin*, 346 F.3d 713, 719 (6th Cir. 2003); *see also Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir.1997)(employee bears the burden of proving that he was entitled to FMLA leave).  Plaintiff does not submit any evidence to contradict Honda's calculations.  Therefore, the Court finds, as a matter of law, that Plaintiff cannot carry his burden of demonstrating that he was an eligible employee and therefore entitled to FMLA leave on April 22-23, 2004.  Defendant Honda is entitled to summary judgment in its favor on Plaintiff's FMLA claim.

## IV.    DISPOSITION

Based on the aforementioned, the Court **GRANTS** Defendant Honda's Motion for Summary Judgment (Doc. 42).

The Clerk shall enter final judgment in favor of Defendant, and against Plaintiff, dismissing Plaintiff's FMLA claim with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Document 42 from the Court's pending motions list.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**